Cruikshank *v.* Parker.

---

## DWIGHT P. CRUIKSHANK et al., trustees &c.,

### *v.*

## CHARLES W. PARKER.

1. By his will a testator bequeathed and devised the residue of his estate to the executors of the will, in trust: "1. That they sell, dispose and convey the same, at public or private sale, at such times and on such terms as they in their, his or her discretion may think proper. 2. That they divide such real and personal property, or the proceeds thereof, into four equal parts or shares, one of such shares for each of my daughters." He also authorized his executors, "until the division or sale" of his residuary estate, to conserve it, by taking the rents and paying for repairs, taxes and insurance. He also directed that when the division of his estate should be made, that his executors should transfer to certain three of his daughters their respective shares, and should "hold, retain, invest and keep invested" the share of the fourth daughter, "and collect and receive and pay or apply the rents, interest and income arising therefrom" to the use of that daughter during her life.—*Held*, that the express direction to sell is not imperative, but stands as a power, by means of which the intended division of the residuary estate may be accomplished, and that it is applicable only to the trust for division and not to the trust of the share to be retained for the life of a daughter; also, that power to sell real estate which may be set apart to the share to be retained in trust, is not to be implied from the direction to "invest and keep invested," because that direction does not extend to such real estate.

Cruikshank *v.* Parker.

2. Specific performance of a contract to buy land will not be enforced where the title to the land is subject to question which rises above mere speculation, theory and possibility and stands in the way of free alienation in the future.

On demurrer to bill for specific performance.

The bill alleges that Rufus Story died in the year 1887, testate, seized of sundry large tracts of land in this state, and leaving him surviving his widow and four daughters; that the complainants are the executor and the executrices of the will of Mr. Story; that by the fifth and sixth paragraphs of his will, Mr. Story made disposition of the residue of his estate as follows:

"*Fifth.* I give, devise and bequeath all the rest, residue and remainder of my estate, real as well as personal of every name and nature and wheresoever situate of which I shall die seized, possessed or entitled (and including on the death of my wife my said homestead mentioned in the second clause of my will and the investment directed to be made for her benefit by the third clauses of my will), to my executrices and executors, the survivors and survivor of them, or to such of them as may qualify, and the survivors and survivor of them in trust, and to and for the uses and purposes following, that is to say:

"1. That they sell, dispose of and convey the same, at public or private sale, at such times and on such terms as they in their, his or her discretion, may think proper.

"2. That they divide such real and personal estate, or the proceeds thereof, into four equal parts or shares, one of such shares for each of my daughters, Mary Elizabeth Palmer, Emily L. Paret, Alice Rowland and Abby Story; that in making such division my executors shall take into consideration and charge and deduct against the share of my daughter Emily L. Paret all sums advanced by me to my son-in-law John Paret, and which shall appear due to me by my books of account, or all evidence of his indebtedness including all promissory notes held by me made by him, as well as by the firm of John Paret & Co.; that my executors convey, pay and assign the shares of my daughters Mary Elizabeth Palmer, Alice Rowland and Abby Story to them absolutely, and hold, retain, invest and keep invested the share of my daughter Emily L. Paret, and collect and receive and pay or apply the rents, interest and income arising therefrom to the use of my said daughter during her life.

"Should any of my daughters die in my lifetime, or on the death of my daughter Emily L. Paret, I give, devise and bequeath the share, the one so dying would have been entitled to, to her issue absolutely, and if none, then to my surviving daughters and to the issue of such of my daughters who may have died, such issue to take by representation.

"*Sixth.* I authorize and empower my executors to pay all' taxes and assessments which may be imposed upon my property (including during the life of my wife my said homestead) until the division or sale thereof; also to pay all premiums of insurance and sums necessary to keep the buildings (including those on my homestead during the life of my wife) in good repair; to lease or rent any of my real estate until such sale or division, and to make all divisions and partitions of my real and personal estate or the proceeds thereof; also to make, seal, execute and deliver all necessary deeds or other instruments in writing, with or without seal, necessary in the premises;"

that by the second codicil of his will he made provision as follows:

"*First.* To avoid any question as to the amount to be deducted from the share of my daughter Emily L. Paret, in my estate on account of, the indebtedness of her husband to me, I order my executors to deduct from such share the sum of forty-nine thousand five hundred and thirty-nine dollars and twenty-eight cents, which last sum shall be divided between my daughters, Mary, Alice and Abby, and the survivors and survivor of them and the issue of any of them who may have died, such issue to take by representation; it is my will that the remainder of said share of my daughter, Emily, shall be held and invested and kept invested during her life by my executors and trustees, who shall collect and pay or apply the interest and income thereof to the use of my daughter, Emily, so long as she shall live, and if she be not living, or on her death, that my executors and trustees convey, pay and assign said residue of such share to her issue absolutely. I further direct my executors to deliver up to my son-in-law John Paret, all evidence I hold of his indebtedness to me without payment of the same;"

that by decree of this court, upon bill filed by the executor and two of the executrices, as complainants against the remaining executrix and Emily L. Paret and all her children and all others in interest as defendants, partition was made of a large portion of the lands which became part of the residue of Mr. Story's estate; that two lots, which are described in the bill, were in such partition set off to the share of Emily L. Paret, and are now held in trust for her by the complainants, in accordance with the provisions of Mr. Story's will; that the complainants duly contracted with the defendant Parker to sell to him those two lots, and in performance of the terms of such contract upon their part, tendered to him a deed thereof; that the defendant Parker refuses to accept such deed and pay the purchase price

of the lots, insisting, among other things, that the complainants are not empowered by the will of Rufus Story to sell and convey those lots.

The bill asks that specific performance of the contract by the defendant may be decreed. To the bill the defendant demurs, raising the single question whether the executors of the will of Rufus Story, as trustees of the share of his daughter, Emily L. Paret, were given power by the will to sell real estate set apart to that share.

*Mr. Isaac S. Taylor* and *Mr. Gilbert Collins*, for the complainants.

*Mr. Charles W. Parker*, demurrant, *pro se.*

THE CHANCELLOR.

I considered this will in the case of *Story* v. *Palmer, 1 Dick. Ch. Rep. 1.* The questions of construction there presented concerned the division of the estate among the children of Mr. Story, and I decided that the testator's express direction to sell did not imperatively require a conversion of his real estate into money, but that, taken with the additional direction to divide, and also with other expressions of the will, it manifested an intention that the executors, in apportioning four equal shares of the residue of the testator's estate, were to act upon the several parcels of land and personalty and divide or sell them, respectively, as in their judgment should appear proper.

Now, the further question arises, whether, after the executors shall have made the division of the estate into four shares, and shall have taken the share apportioned for Emily L. Paret in separate trust as the will contemplates, they have yet remaining power to sell the several parcels of land of which that share is partially constituted.

It is observed that the testator contemplated two trusts—*first*, a trust to divide his residuary estate into four equal portions, from one of which the sum of $49,539.28 may be deducted ; and, *second*, after the transference of three of those portions and

$49,539.28 of the fourth share to beneficiaries, the retention of the remainder of the last-mentioned share, during the life of one of his daughters, in such manner that the daughter shall have the income while she lives and her issue shall have the *corpus* at her death.

As I have formerly decided, the express direction to sell is not imperative, but stands as a power by means of which the intended division of the residuary estate may be accomplished. That it is intended for use in and is applicable to the first trust only, I think is manifested in the sixth paragraph of the will, by which provision is made for the preservation and protection of the estate " until sale or division thereof" and " until such sale or division." There, it is observed, both powers—to sell and to divide—are treated as relating to the creation of the four shares, impliedly excluding their further application.

It is especially worthy of note that to make those four shares the executors were equipped with the double power to sell and to divide, so that it became with them feasible and a matter of wise discretion, in view of the second trust, to determine of what kinds of property the several shares, and particularly the share of Mrs. Paret, should consist—whether the shares should be constituted by the mere division of the parcels of the testator's estate in kind, real or personal, as he left it, or by division after partial sale, or of money after complete conversion of the estate into cash.

Did the testator intend that after the executors had exercised their discretion in creating the share of Mrs. Paret and setting it apart in trust, they should yet possess power to sell the real estate of which it might be partially constituted?

If such a power exists, I think it must be found by implication from the language which creates the second trust. It is not expressly given. The concise statement of the rule touching such implication, by Chief-Justice Shaw, in *Going* v. *Emery, 16 Pick. 107, 112,* was approved in the opinion of the court of errors and appeals of this state, written by Mr. Justice Depue, in *Lindley* v. *O'Reilly, 21 Vroom 649.* It is this: " If a testator having a right to dispose of his real estate, directs that

should be done by his executor which necessarily implies that the estate is first to be sold, a power is given by this implication to the executor to make such sale and execute the requisite deed of conveyance."

The application of this rule is illustrated in the case of *Haggerty* v. *Lanterman, 3 Stew. Eq. 37,* where the direction was that the testator's entire estate should be divided into seven shares, and that two of those shares should be invested for the use of two of the testator's daughters, to which direction, after the appointment of an executor, this language was added : " My will and wish is to consult the heirs, whether it will be best to sell it or otherwise—the homestead property." In that case it was clear that the testator intended that the whole of the shares set apart to the two daughters was to be invested, and, as a necessary consequence, that those shares should be first reduced, by sale, to money, which could be invested, and, under the additional clause, that he had in mind that there would be a sale to accomplish the division he intended, for he manifests his purpose by the use of the word " sell," when he leaves it to his children to determine whether the homestead shall be parted with. And in *Belcher* v. *Belcher, 11 Stew. Eq. 126,* where property was given to executors in trust to be equally divided among the testator's children, with a direction to " pay " the sons their shares and to retain the daughters' shares and " pay " the daughters the income thereof for life, it was decided that the directions to " pay " the sons' shares necessarily implied a direction to convert them into money—that which could be paid— and that the direction to " pay " the income of the daughters' shares implied a direction to invest, which involves the necessity of converting the land into money. And so, also, in *Naar* v. *Naar, 14 Stew. Eq. 88,* the gift of all the decedent's interest in all the real and personal property of a partnership of which he was a member, in trust, " to invest as fast as realized," was held to imply a trust to convert to money, and, therefore, necessarily to sell.

Returning to the will considered, it is found that the second trust is created in the fifth paragraph, in this language:

"And hold, retain, invest and keep invested the share of my daughter Emily L. Paret, and collect and receive and pay or apply the rents interest and income arising therefrom to the use of my said daughter during her life."

The expressed object of the second codicil of the will is to make certain the amount to be deducted from the trust share. After it accomplishes that purpose it restates the trust for Mrs. Paret, in these words:

"Shall be held and invested and kept invested during her life by my executors and trustees, who shall collect and pay or apply the interest and income thereof to the use of my daughter Emily so long as she shall live, and if she be not living or on her death that my executors and trustees convey, pay and assign said residue of such share to her issue absolutely."

Upon this language it is argued, under the rule I have stated, that implied power to sell is to be found in Mr. Story's direction to "invest and keep invested," because only money is invested, and sale is necessary to convert real estate into money.

The objection to that argument is, that it assumes that the direction to invest applies to the entire share of Mrs. Paret, and not merely to that part of it which already is, or by the maturing of existing securities may become, money, and this objection resolves the vital question in the present inquiry to this: Does the direction to invest extend to the entire share of Mrs. Paret?

As the trust is stated in the fifth paragraph of the will, the executors are not only to *retain* that share, but are also to *hold* it and invest it, taking from it, not interest alone, the product of investment, but also *rents*, the product of real estate, and *income* which may arise from any species of property. It is impossible to say, from such language, that investment of the entire share was contemplated. I think that it much more clearly appears that the testator intended that the trustees should hold the realty, taking its rents, and invest the personalty, receiving its interest. Such an interpretation of his intention is certainly more easily reconciled with his language. And such interpretation does not appear to be defeated by the codicil. That instrument was not made to declare another and different trust. Its object was expressly declared to be the purpose which I have

already indicated. It merely restated the trust which the fifth paragraph had previously declared. I do not overlook the circumstance that in such restatement the word *retain* is dropped, and for that reason room is given for contention that the word *hold* was originally used in the sense of *retain* and not to characterize any species of property, and that the word *rents* is likewise omitted, affording a loop-hole for argument that the testator wished to exclude the idea of retained realty. The answer to such contentions is, that their strength must rest in the hypothesis that the words referred to were intentionally dropped, and not in the fact that they are merely absent, for the language which remains is entirely consistent with the retention of the whole share in the several species of property of which it originally consists, for the word *income* is comprehensive enough to include rents, and the last direction of the codicil defeats the hypothesis by the language of its provision, that when Mrs. Paret shall die the trustees are to "convey, pay and assign." They are to *convey* realty, *pay* money and *assign* securities. All species of property are thus in contemplation.

I think that the direction to invest is not intended to be applied to more of Mrs. Paret's share than is already investible and invested, and hence that, as obedience to it does not involve the necessity of sale, the direction does not imply the power to sell.

But if I am wrong in my conclusion, I apprehend that the objection that the trustees are without power of sale is at least a serious one, which rises above mere speculation, theory and possibility, and hence so fairly stands in the way of free alienation of the land in question, that that land should not be forced upon the defendant, especially as neither Mrs. Paret nor her issue are parties to this proceeding to be bound by the decree I may make. The case is one in which specific performance should not be decreed. *Paulmier* v. *Howland, 4 Dick. Ch. Rep. 364, 372.*

I will sustain the demurrer.